IRVING "ASH" RESNICK, Appellant, *v.* NEVADA GAMING COMMISSION, STATE GAMING CONTROL BOARD, Respondents.

No. 17675

March 31, 1988                    752 P.2d 229

---

[Rehearing denied June 23, 1988]

*Gary Logan,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City, and *Ellen F. Whittemore,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

### The Facts

In 1984, the State Gaming Commission (hereafter "Commission") determined that Resnick was an employee who exercised significant influence over the operation of the Dunes Hotel and Casino and ordered him to apply for a license. In May 1986, Resnick was informed that his public hearing with the State Gaming Board (hereafter "Board") would be held in July 1986. He then filed a petition with the Commission, asking it to compel the Board to provide him with a copy of the investigative report the Board had prepared, or at least provide him with a hearing on the issue of whether he should be granted discovery of the

report.[1] These requests were denied by the Commission, which issued an order to that effect.[2]

Resnick then filed a petition to review the Commission's order denying discovery with the district court, together with a complaint for declaratory judgment. Resnick sought (1) an order reversing the Commission's decision that it would not compel the Board to provide Resnick with a copy of the report, and (2) a declaratory judgment construing NRS 463.313(1)(b) to permit prehearing discovery by Resnick of the Board's investigative materials. The court held that it lacked jurisdiction to provide the relief requested. Resnick now appeals the lower court's decision.[3]

## Discussion

We have often reiterated that Nevada law requires the courts to play a limited role in gaming license decisions by the Commission and Board. For example, in Gaming Control Bd. v. District Ct., 82 Nev. 38, 40, 409 P.2d 974, 975 (1966), we noted "The State Constitution, art. 6, § 6, does not authorize court intrusion into the . . . licensing . . . of gaming." And in State of Nevada v. Rosenthal, 93 Nev. 36, 41, 559 P.2d 830, 834 (1977), we noted that judicial review of the Commission's final orders and decisions was appropriate "only in specified instances."

Despite this general principle of non-intervention, Resnick asserts that the lower court had jurisdiction to consider and reverse the Commission's order under NRS 463.315. NRS 463.315(1) provides "any person aggrieved by a final decision or order of the commission made after hearing or rehearing by the commission pursuant to NRS 463.312 to 463.3145, inclusive, and whether or not a petition for rehearing was filed, may obtain a judicial review thereof." However, we are convinced that the Commission's order denying discovery was not a decision or order which could be appropriately reviewed under NRS 463.315. The Commission's order to deny discovery was not,

---

[1]Resnick is concerned because in 1978, to become Director of Casino Operations at the Aladdin Hotel, he apparently underwent the licensing process. He alleges that, having undergone the process, he now realizes he must have a copy of the report to ensure that he has the best possible chance of being licensed. He claims that the Board and the Commission's decisions are unduly influenced by the information contained in the report, which may not be accurate.

[2]The Commission allowed counsel for Resnick and the Board to submit briefs on whether discovery should be required but did not hold a formal hearing on the issue.

[3]The Board and Commission hearings are on hold, pending the resolution of this dispute.

under NRS 463.315, a "final decision or order." By using the words "final decision or order," the legislature has indicated that dispositions such as disciplinary orders, decisions to suspend or revoke licenses, and resolutions on the merits of certain controversies may be reviewed by the courts. The legislature did not intend, by using the words "final decision or order," that an interlocutory Commission determination about the discoverability of certain materials would be immediately subject to judicial scrutiny.[4]

Even if we assumed that the Commission's order was a final order under NRS 463.315, there is no proof it was made after a "hearing or rehearing by the commission pursuant to NRS 463.312 to 463.3145." Both parties argue at some length about which hearings are hearings "pursuant to NRS 463.312 to 463.3145." Resnick argues that all hearings are hearings pursuant to NRS 463.312 to 463.3145 and that therefore any decision or final order from a hearing is subject to judicial review. Respondents argue, however, that NRS 463.312 to 463.3145, as mentioned in NRS 463.315, only covers disciplinary hearings, and that only final orders from such hearings are subject to judicial review.

The issue of what hearings are covered by NRS 463.315 need not now be decided because the Commission, prior to issuing its order, did not conduct any hearing whatsoever. When hearings are conducted by the Commission, certain procedures must be followed. For example, NRS 463.3133 requires that at least three members of the Commission attend all hearings, and that proceedings be reported. NRS 463.313 also provides that if a hearing is held, the parties have certain rights, including the right to be present when the hearing is held. However, the record clearly indicates that no hearing was held by the Commission prior to issuing its order.[5] Moreover, Resnick has not shown that the Commission was required to hold a hearing on the matter. Therefore, it cannot be seriously contended that the Commission's order was an order "made after hearing or rehearing."

Finally, to hold that the district court had jurisdiction under NRS 463.315 to consider and reverse the Commission order would be contrary to our holding in George v. Nevada Gaming

---

[4]We note that under NRS 463.318, "Judicial review is not available for actions, decisions and orders of the commission relating to the denial of a license or to limited or conditional licenses." If the legislature did not intend the courts to have jurisdiction to review final decisions pertaining to a denial of licensing, it is hard to believe it intended to allow the courts to review interlocutory orders denying discovery.

[5]Resnick, in fact, concedes in his statement of the facts that the Commission's order, "signed by Paul Bible . . . was denied without hearing."

Comm'n, 86 Nev. 374, 468 P.2d 995 (1970). In George, the Board recommended denying an applicant a license. Before the Commission hearing, the applicant petitioned the district court for a writ of mandamus compelling the Commission to order the Board to supply George with all materials the Board had obtained about George's background. The district court, however, held that it did not have jurisdiction to issue the writ. We affirmed the lower court's decision, suggesting that the licensing procedure was normally beyond the scrutiny of the courts.

Although Resnick is not requesting equitable relief as George did, the end Resnick seeks is the same sought by George. George sought an equitable order compelling the Commission to order the Board to provide materials; Resnick seeks to compel the Commission to order the Board to produce certain materials. The legislature, however, did not intend judicial intervention in such matters. Therefore, the lower court correctly determined that it did not have jurisdiction, under NRS 463.315, to consider the Commission's ruling.

Resnick also asked the lower court, under NRS 463.343,[6] to interpret NRS 463.313(1) to allow pre-hearing discovery of investigative reports. However, NRS 463.313(1) does not permit discovery of the report. It provides:

> At all hearings before the commission other than investigative hearings:
>
> . . . .
> (b) Every party has the right to:
> (1) Call and examine witnesses;
> (2) Introduce exhibits relevant to the issues of the case, including the transcript of testimony at any investigative hearing conducted by or on behalf of the board or the commission;
> (3) Cross-examine opposing witnesses on any matters relevant to the issues of the case, even though the matter was not covered in a direct examination;
> (4) Impeach any witness regardless of which party first called him to testify; and
> (5) Offer rebuttal evidence.

Resnick argues that in order to fully exercise these rights, he must have access to the report. He contends that the procedural safeguards of NRS 463.313(1) are attenuated unless an applicant

---

[6]NRS 463.343 provides: [A]ny applicant . . . which is registered with the commission may obtain a judicial determination of any question of construction . . . arising under this chapter . . . by bringing an action for a declaratory judgment."

has access to the materials that would help him fully exercise these rights. He concludes, therefore, that NRS 463.313 must be interpreted to allow pre-hearing discovery.

Resnick's argument is flawed in several respects. First, he incorrectly assumes that because he has the right to cross-examine a witness, he has a right of access to all materials which would assist him in this cross-examination. This logical leap, in our opinion, simply is not justified. Second, Resnick assumes that the safeguards provided by the legislature in NRS 463.313 are not adequate. We disagree. Although an applicant does not have the right to discover the Board's report, he does have other rights—the right to call witnesses, offer evidence, cross-examine and impeach witnesses, and provide exhibits. Resnick has not shown that these protections inadequately protect an applicant's rights. And most importantly, if the legislature intended an applicant to have access to the Board's report or to otherwise be entitled to conduct discovery, it could have so specified.[7] Therefore, Resnick's argument that NRS 463.313 should be interpreted to allow pre-hearing discovery is without merit.

Finally, Resnick argues that under the fourteenth amendment of the U.S. Constitution, and art. I, § 8 of the Nevada Constitution, he is guaranteed the right of due process before being deprived of property or liberty. He contends that the continuation of employment in the gaming industry is a property or liberty interest which is protected by the due process clauses of the federal and state constitutions. He thus maintains that, in order to have due process of law, he must be allowed discovery of the report prepared by the Board as a predicate to the Commission's right to take any action that could deprive him licensure.

Resnick's entire constitutional argument is based on a purely conjectural premise—that in the future, he will be denied a license, and therefore deprived of property or liberty. He is assuming an outcome which may not occur. At this point, the Board and Commission hearings are on hold, and we do not know what the Commission decision will eventually be. Resnick's argument that he will be deprived of property or liberty is therefore purely conjectural.

In Doe v. Bryan, 102 Nev. 523, 525, 729 P.2d 443, 444 (1986) (quoting Kress v. Corey, 65 Nev. 1, 26, 189 P.2d 352, 364 (1948)), we noted "Nevada has a long history of requiring an

---

[7]Other state legislatures, for example, have expressly provided for discovery in an administrative proceeding. *See* W. Gellhorn, C. Byse, P. Strauss, *Administrative Law: Cases and Comments* 682 (7th ed. 1979). Some scholars feel, however, that this may cause delay, which the administrative process generally attempts to avoid. *Id.* at 682-83.

actual justiciable controversy as a predicate to judicial relief. Moreover, litigated matters must present an existing controversy, not merely the prospect of a future problem. . . . 'The issue involved in the controversy must be ripe for judicial determination.' ''

As Tribe notes, ''In gauging the fitness of the issues in a case for judicial resolution, courts are centrally concerned with 'whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.' ''[8] In order to be ripe, however, a party need not necessarily show that he has been harmed in the past by a constitutional violation. If harm is likely to occur in the future because of a deprivation of a constitutional right, then a ripe case or controversy may exist. But the party must show that it is probable future harm will occur. *See* Regional Rail Reorganization Cases, 419 U.S. 102, 143 (1974) (quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593 (1923) (''One does not have to await the consummation of threatened injury to obtain prevention relief. If the injury is certainly impending that is enough.''); *cf.* Laird v. Tatum, 408 U.S. 1, 13-14 (1972).

In this action, Resnick has not shown that it is probable that he will be denied a license in the future. In fact, because he was previously granted a license in 1978, one could reasonably conclude that he will again be approved for a license, unless facts have arisen during the intervening period that would lead the Commission to a different conclusion.

Once the hearings are completed, and if Resnick is eventually denied a license, then he can challenge the denial on the basis that he has been deprived of property or liberty without due process of law. At that point, Resnick may have a factual foundation for an assertion that he has been deprived of something. At this point, however, his argument is based on a purely hypothetical premise that we decline to consider. The order of the district court is affirmed.

---

[8]L. Tribe, American Constitutional Law 78 (2nd ed. 1988) (quoting 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3532 (2d. ed. 1984)).