**131 Nev., Advance Opinion 67**

IN THE SUPREME COURT OF THE STATE OF NEVADA

JAMES S. TATE, JR.,
Appellant,
vs.
THE STATE OF NEVADA BOARD OF
MEDICAL EXAMINERS,
Respondent.

No. 65460

**FILED**

SEP 10 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying an injunction challenging the constitutionality of a statute prohibiting stay of Board of Medical Examiners decision. Eighth Judicial District Court, Clark County; James M. Bixler, Judge.

*Reversed and remanded.*

Hafter Law and Jacob L. Hafter, Las Vegas,
for Appellant.

Erin L. Albright, Reno,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, C.J.:

NRS 630.356(1) grants physicians the right to judicial review of Nevada State Board of Medical Examiners final decisions, while NRS 630.356(2) simultaneously prohibits district courts from entering a stay of

15-27329

the Board's decision pending judicial review. As a matter of first impression, we are asked to determine whether this prohibition violates the Nevada Constitution's separation of powers doctrine. Because we conclude that it does, we reverse the district court's order denying appellant injunctive relief and remand this matter for proceedings consistent with this opinion.

## FACTS

Appellant James Tate, Jr., is a surgeon licensed in Nevada. In February 2010, he was scheduled to perform a surgery at Valley Hospital at around 4 p.m. When he arrived to prepare for the surgery, members of the surgical team thought Dr. Tate smelled of alcohol. The hospital halted surgery preparations and asked Dr. Tate to submit to alcohol tests, which he did, admitting that he had consumed some alcohol during his lunch break. Dr. Tate's blood alcohol level was .06 percent.

Respondent Nevada State Board of Medical Examiners found that Dr. Tate had violated NAC 630.230(1)(c) by rendering services to a patient while under the influence of alcohol and in an impaired condition. The Board suspended Dr. Tate's license for six months, issued a public reprimand, ordered him to complete an alcohol diversion program and pay $35,564.44 in investigation and prosecution costs and a $5,000 fine, and to complete continuing medical education on the subject of alcohol.

Dr. Tate petitioned for judicial review of the Board's decision. He also requested a preliminary injunction to stay the sanctions and prevent the Board from filing a report with the National Practitioner Data Bank while judicial review was pending. Medical Boards are required by 45 C.F.R. §§ 60.5(d) and 60.8(a) (2013) to report sanctions to the National Practitioner Data Bank, which disseminates information of physician misconduct to health-care entities, including hospitals. *See* Elisabeth

Ryzen, M.D., *The National Practitioner Data Bank*, 13 J. Legal Med. 409, 411-20 (1992). In denying injunctive relief, the district court stated that, even though it thought the injunction was clearly warranted, NRS 630.356(2) precluded such action. Dr. Tate appeals the district court's denial of his injunction request.

## DISCUSSION

The primary issue in this appeal is whether NRS 630.356(2) violates the separation of powers doctrine articulated in Article 3, Section 1 of the Nevada Constitution, which is a matter of first impression. Dr. Tate argues that the statute conflicts with the judicial powers articulated in Article 6, Section 6 of the Nevada Constitution. The Board counters that courts have no inherent authority over administrative actions and that any authority given by statute is likewise subject to statutory limitations, that this court has already determined that prohibitions against stays are not unconstitutional, and that other jurisdictions have upheld similar stays.[1]

*Standard of review*

We review appeals from district court decisions regarding petitions for judicial review under the same standard utilized by the district court. *Nassiri v. Chiropractic Physicians' Bd.*, 130 Nev., Adv. Op.

---

[1]The Board also argues that courts cannot enjoin the Board from reporting to the National Practitioner Data Bank. While we note a conflict in cases from other jurisdictions concerning the application of the Health Care Quality Improvement Act of 1986 to state court injunctions, *compare Diaz v. Provena Hosps.*, 817 N.E.2d 206, 212-13 (Ill. App. Ct. 2004), *with Doe v. Cmty. Med. Ctr., Inc.*, 221 P.3d 651, 658-59 (Mont. 2009), because the Board already reported to the National Practitioner Data Bank on April 23, 2014, this issue is moot.

27, 327 P.3d 487, 489 (2014). Although we review factual determinations for clear error, we review questions of law, including statutory construction, de novo. *Id.* Whether a statute is unconstitutional is a question of law, reviewed de novo. *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 509, 217 P.3d 546, 551 (2009). Words in a statute should be accorded their plain meaning unless doing so would be contrary to the spirit of the statute. *Berkson v. LePome*, 126 Nev. 492, 497, 245 P.3d 560, 563 (2010). Statutes should be construed so as to avoid absurd results. *State v. Tatalovich*, 129 Nev., Adv. Op. 61, 309 P.3d 43, 44 (2013). Absent a contrary and specific constitutional limitation, "statutes are to be construed in favor of the legislative power." *Galloway v. Truesdell*, 83 Nev. 13, 20, 422 P.2d 237, 242 (1967).

*The prohibition against stays in NRS 630.356(2) violates the separation of powers doctrine*

It is well-established that "[c]ourts have no inherent appellate jurisdiction over official acts of administrative agencies except where the legislature has made some statutory provision for judicial review." *Crane v. Cont'l Tel. Co. of Cal.*, 105 Nev. 399, 401, 775 P.2d 705, 706 (1989). Moreover, the extent of the court's jurisdiction is controlled by the statute conferring that jurisdiction. *Washoe Cnty. v. Otto*, 128 Nev., Adv. Op. 40, 282 P.3d 719, 724 (2012). However, once a statute has conferred power, that power may not be unduly abridged, as the judiciary is tasked with managing and finally deciding cases. *See Smothers v. Lewis*, 672 S.W.2d 62, 64 (Ky. 1984) (concluding "that a court, once having obtained jurisdiction of a cause of action, has, as an incidental to its constitutional grant of power, inherent power to do all things reasonably necessary to the administration of justice in the case before it"); *Commonwealth v. Yameen,*

516 N.E.2d 1149, 1151 (Mass. 1987) (declining to interpret a statute to prohibit a stay of a license revocation pending judicial review).

In Nevada, the Administrative Procedure Act (APA), codified in NRS Chapter 233B, governs the judicial review of those final administrative agency decisions that qualify under the terms of the APA, thus conferring power to the district courts to determine whether an aggrieved party is entitled to the relief sought on review. *Otto*, 128 Nev., Adv. Op. 40, 282 P.3d at 724-25; *Kay v. Nunez*, 122 Nev. 1100, 1105, 146 P.3d 801, 805 (2006) (stating that petitions for judicial review create "a right of review in the district court"); *see also* NRS 233B.020(1) (setting forth the legislative intent for enacting the APA); NRS 233B.130(1) (setting forth the procedural requirements for a petition for judicial review in order to invoke the district court's jurisdiction).

In an administrative proceeding before the Board of Medical Examiners, a physician has the right to seek judicial review of a final order pursuant to NRS 630.356, which states in pertinent part as follows:

> 1. Any person aggrieved by a final order of the Board is entitled to judicial review of the Board's order.
>
> 2. Every order that imposes a sanction against a licensee pursuant to subsection 4 or 5 of NRS 630.352 or any regulation of the Board is effective from the date the Secretary-Treasurer certifies the order until the date the order is modified or reversed by a final judgment of the court. *The court shall not stay the order of the Board pending a final determination by the court.*

(Emphasis added.)

The parties differ on whether a statutory prohibition against stays violates the separation of powers doctrine. Although not previously

examined by this court,[2] other courts have considered this issue, and the outcomes in those jurisdictions vary widely.

For example, in *Commission on Medical Discipline v. Stillman*, a lower court reviewing an administrative agency's revocation of a physician's medical license granted a stay of the revocation pending judicial review, despite statutory language prohibiting stays. 435 A.2d 747, 751-52 (Md. 1981). The *Stillman* court held that the prohibition against stays was constitutional because a stay is not an inherent judicial power, but merely a tool courts may use in administering justice. *Id.* at 753-54. Because the physician retained the right to seek judicial review and the court retained its power to review the agency's actions, the court further held that the statutory prohibition against stays did not inhibit the administration of justice. *Id.* at 755.

---

[2]The Board cites to *Buckwalter v. Nevada Board of Medical Examiners*, 678 F.3d 737 (9th Cir. 2012); *State v. Eighth Judicial District Court (Gaming Commission)*, 111 Nev. 1023, 899 P.2d 1121 (1995); and *Kassabian v. State Board of Medical Examiners*, 68 Nev. 455, 235 P.2d 327 (1951), to argue that this court has previously decided this issue. We disagree. As neither *Kassabian* nor *Buckwalter* dealt with separation of powers, they are inapplicable here. *Gaming Commission* is too factually dissimilar to guide the outcome in the present case, as there the issue was whether the Gaming Commission could exclude a customer from a gaming establishment, 111 Nev. at 1024, 899 P.2d at 1121, whereas here the interest at stake is a physician's constitutional right to practice his profession within the legal bounds of this state. *See generally Kassabian*, 68 Nev. at 464, 235 P.2d at 331. Moreover, in *Gaming Commission*, we relied upon a long line of Nevada jurisprudence to conclude that the Nevada Constitution "does not authorize court intrusion into the administration, licensing, control, supervision and discipline of gaming." 111 Nev. at 1025, 899 P.2d at 1122. Thus, we do not have the benefit of prior jurisprudence to guide us on the issue before us.

In contrast, the Supreme Court of Kentucky took the opposite view in *Smothers v. Lewis*, 672 S.W.2d 62 (Ky. 1984). There, a licensing control board revoked a store owner's alcoholic beverage license, and the lower court found that the statutory scheme prevented it from issuing a stay pending judicial review. *Id.* at 63. The *Smothers* court held that a statute prohibiting any stay of a board's order pending judicial review violated the separation of powers doctrine because it was a legislative encroachment on the powers of the judiciary. *Id.* at 64. The court reasoned that where the statute allowed the licensee to appeal a board's decision, to simultaneously preclude the possibility of a stay would be "to pay lip service to the statutory provisions that establish the right for a licensee to appeal while eradicating any practical reason for taking the appeal." *Id.* at 65. The prohibition effectively puts "a licensee in the position of winning the battle but losing the war" because the sanctions could cause irreparable injury while review was ongoing. *Id.* "Succinctly put, the statute gives an appeal and then takes it away. The contradiction and conflict here are obvious. The practical effect is to render the appeal a meaningless and merely ritualistic process." *Id.* We agree with the reasoning in *Smothers*.

The Legislature's enactment of NRS 630.356 provided physicians with the right to seek judicial review of Board decisions, thereby empowering the district courts with the ability to determine whether an aggrieved party is entitled to the relief sought on review, and if so, to shape that relief accordingly. Typically, once a court gains jurisdiction of a case, it has the power "to preserve the status quo and maintain and protect . . . the subject-matter of the suit as it existed at the time the appeal was taken." *Houston, B & T Ry. Co. v. Hornberger*, 141

SUPREME COURT
OF
NEVADA

(O) 1947A

S.W. 311, 312 (Tex. Civ. App. 1911). Likewise, the district court may issue an injunction to enjoin a party from taking action that would "render the judgment ineffectual." NRS 33.010(3).

To bar a district court's ability to grant injunctive relief while judicial review is pending effectively "render[s] the appeal a meaningless and merely ritualistic process," *Smothers*, 672 S.W.2d at 65, as the sanctions imposed will likely have been implemented or completed before the court could judicially review the case. Such sanctions may, among other things, irreparably penalize a physician through loss of patients, income, job opportunities, and/or damage the physician's professional reputation and standing if the court were to later overrule the Board's decision and the sanctions imposed.

Because NRS 630.356(2)'s prohibition against stays renders meaningless the legislative grant of authority to the district courts to judicially review Board decisions and encroaches on a district court's "inherent power to do all things reasonably necessary" to administer justice, including issuing injunctions, we conclude that NRS 630.356(2) violates the separation of powers doctrine. *Smothers*, 672 S.W.2d at 64-65; *see also Ardt v. Ill. Dep't of Prof'l Regulation*, 607 N.E.2d 1226, 1232 (Ill. 1992).

Here, Dr. Tate has been sanctioned with, among other things, fees and fines, a public reprimand, and suspension of his license for a six-month period. If the district court were prohibited from staying the sanctions imposed until it can determine whether the Board's decision was in error, Dr. Tate may be irreparably penalized thus negating the purpose of his right to judicial review. Moreover, under federal law, these sanctions must be reported to the National Practitioner Data Bank within

30 days of their implementation, 45 C.F.R. §§ 60.5 and 60.8, resulting in the Board's decision and sanctions against Dr. Tate being recorded in a national database before the district court can review the Board's decision. Thus, the statutory prohibition against stays would effectively "eradicate[ ] any practical reason for taking the appeal." *Smothers*, 672 S.W.2d at 65.

Furthermore, we are inclined to agree with Dr. Tate that public interest militates in favor of injunctive relief when the district court deems it necessary. In *Kassabian*, we noted that "'[t]he Legislature may have thought that the professions and callings to which this statute was applicable were such that the public health, safety, and welfare might be protected better if a stay were forbidden,'" 68 Nev. at 466, 235 P.2d at 332 (quoting *Flynn v. Bd. of Registration in Optometry*, 67 N.E.2d 846, 850 (Mass. 1945)), echoing the public perception that there were many dangerous doctors from whom the public needed protection. *See also* Katharine A. Van Tassel, *Blacklisted: The Constitutionality of the Federal System for Publishing Reports of "Bad" Doctors in the National Practitioner Data Bank*, 33 Cardozo L. Rev. 2031, 2041-51 (2012) (discussing the health-care atmosphere in the 1980s and public perception of doctors). However, a prohibition against stays could potentially endanger the public: for example, if a Board refused to suspend or revoke the license of a doctor who was questionably dangerous, a reviewing court would be unable to enjoin the doctor from practicing medicine pending judicial review. Allowing stays, on the other hand, presents little danger to the public health, safety, or welfare as the impartial judge will weigh public interests, including potential danger to the public, in deciding whether to grant or deny a stay. *See* 42 Am. Jur. 2d *Injunctions* § 15

(2015) ("Deciding an injunction motion requires a delicate balancing of several factors, including . . . the interest of the public or others."); 42 Am. Jur. 2d *Injunctions* § 39 (2015) (discussing how the public interest and the rights of third parties weighs on the grant or denial of injunctive relief). Thus, we conclude that NRS 630.356(2)'s prohibition against stays is also against the public interest.[3]

---

[3]Dr. Tate did not argue that the stay violates due process, and over 60 years ago we held that a prohibition against stays during the pendency of judicial review of a Board decision was not a deprivation of due process. *Kassabian*, 68 Nev. at 465-66, 235 P.2d at 332. However, in *Kassabian*, we also recognized that the facts of a situation as a whole drive due process considerations and implied that stays may violate due process rights where due process is not otherwise sufficiently afforded to the defending physician. *Id.* (stating that physicians were, at that time, afforded sufficient due process by virtue of the administrative procedure the Board was required to follow before it could take disciplinary action).

It is well-established that a fundamental right may not be impaired without due process of law. *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 609 F. Supp. 2d 1163, 1172-73 (D. Nev. 2009); *Maiola v. State*, 120 Nev. 671, 674-75, 99 P.3d 227, 229 (2004). Moreover, we have recognized that a physician's interest in practicing medicine is a property right that must be afforded due process. *Minton v. Bd. of Med. Exam'rs*, 110 Nev. 1060, 1082, 881 P.2d 1339, 1354 (1994), *disapproved of on other grounds by Nassiri v. Chiropractic Physicians' Bd.*, 130 Nev., Adv. Op. 27, 327 P.3d 487, 489 (2014); *Molnar v. State ex rel. Bd. of Med. Exam'rs of the State of Nev.*, 105 Nev. 213, 216, 773 P.2d 726, 727 (1989); *Potter v. State Bd. of Med. Exam'rs*, 101 Nev. 369, 371, 705 P.2d 132, 134 (1985); *Kassabian*, 68 Nev. at 464, 235 P.2d at 331.

Several courts have addressed whether a physician has been afforded adequate process in determining whether the prohibition of a stay pending judicial review violates a physician's due process rights. *Compare Barry v. Barchi*, 443 U.S. 55, 63-66 (1979) (concluding that statute prohibiting administrative stays pending the final hearing was

*continued on next page . . .*

10

## CONCLUSION

Through the adoption of NRS 630.356(2), the Legislature gave physicians the right to contest and the district courts the power to review the Board's final decisions. By simultaneously extinguishing the court's ability to impose a stay where the progression of sanctions would impair or eliminate the purpose of seeking judicial review, the statute impermissibly acts as a legislative encroachment on the court's power to do what is reasonably necessary to administer justice. This, we conclude, is a violation of the separation of powers doctrine.

---

*. . . continued*

unconstitutionally applied where post-suspension hearing was not sufficiently timely), *with Flynn v. Bd. of Registration in Optometry*, 67 N.E.2d 846, 849-50 (Mass. 1945) (concluding that statute prohibiting stay of agency action suspending an optometrist's license did not violate due process).

Because the issue of whether NRS 630.356(2)'s prohibition against a stay pending judicial review violates a physician's due process rights is not before us in this matter, we leave that legal issue for a case that requires its determination.

Accordingly, we reverse the district court's order and remand this matter to the district court for further proceedings consistent with this opinion.

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A